ELGEN MANUFACTURING CORPORATION, Plaintiff-Appellant,

v.

VENTFABRICS, INC., Defendant-Appellee.

ELGEN MANUFACTURING CORPORATION, Plaintiff-Appellee,

v.

VENTFABRICS, INC., Defendant-Appellant.

Nos. 13792, 13793.

United States Court of Appeals Seventh Circuit.

March 6, 1963.

Charles J. Merriam, Norman M. Shapiro, Chicago, Ill., Merriam, Smith & Marshall, Chicago, Ill., of counsel, for Elgen Mfg.

Edward H. Hatton, Chicago, Ill., John H. Sutherland, Rose N. Perotti, St. Louis, Mo., Howard R. Barron, Chicago, Ill., for Ventfabrics.

Before DUFFY, SCHNACKENBERG and KNOCH, Circuit Judges.

DUFFY, Circuit Judge.

Appeal No. 13792.

In this suit, plaintiff claimed infringement of United States Letters Patent Nos. 2,777,573 and 2,825,384. By stipulation, the suit was dismissed as to Patent No. 2,777,573.[1]

Plaintiff is the owner of Goldsmith Patent No. 2,825,384 which was issued March 4, 1958. This patent was held valid and infringed (Claims 7, 8, 14, 15, 17, 18 and 19, inclusive) in Elgen Manufacturing Corporation v. Grant Wilson, Incorporated, and the findings, conclusions and judgment of the District Court were sustained by this Court in Elgen Manufacturing Corporation v. Grant Wilson, Incorporated, 7 Cir., 285 F.2d 476 (1961). For convenience, that case will sometimes be referred to as the "Grant Wilson" case.

In the case at bar, Claims 1, 7, 8, 11, 12, 14, 15 and 19 of Patent No. 2,825,384 were in issue. The trial court found and concluded that all of such claims were valid, but also found and concluded that they had not been infringed by defendant herein.

Claims 1, 7 an 8 are apparatus claims while Claims 11, 12, 14, 15 and 19 are method claims. On this appeal, plaintiff presents only the question of infringement of method Claims 12, 14 and 15. Plaintiff has expressly waived any appeal as to Claims 1, 7, 8, 11 and 19.

This Court, in the Grant Wilson case, held that Claims 14 and 15 were valid and infringed. However, Claim 12[2] which is here at issue, was not at issue in the Grant Wilson case.

Goldsmith Patent No. 2,825,384 is directed to a method of making a coil of

1. Defendant agreed that it will not, during the life of that patent, make, use or sell in the United States, overlapped, coiled duct connectors for sheet metal ducts, wherein metal strips are secured to the side marginal edges of flexible fabric material and overlie each other in the coil substantially in the manner of Fig. 2 of the Goldsmith Patent No. 2,777,573.

2. Claim 12 is stated as:
"12. A method of continuously producing a stock material in which each marginal side edge of an elongated strip of fabric is securely attached to a separate elongated strip of metal which comprises progressively longitudinally advancing two elongated metal strips in predetermined widthwise relationship, progressively applying pressure to form the outer marginal portions of each of said metal strips while maintaining the inner edges of said metal strips in predetermined position so that the said metal strips together form a trough, progressly placing a strip of fabric upon said trough, progressively applying pressure to bend the outer marginal portions of each of said metal strips over upon said strip of fabric and progressively applying pressure to the folded over portion of said metal strips to securely attach a marginal portion of each of said metal strips to each of the side edges of said strip of fabric."

flexible duct connector material and the apparatus used in practicing the method.

In the air-heating and ventilating industries, it is common practice to have a series of connected metal air ducts which extend from the blower unit of a furnace or ventilating unit to a desired air outlet. If these ducts are rigidly attached to each other, noise and vibration will result. It became standard practice to place a flexible duct connector between the ducts in order to reduce vibration and other noises.

The flexible duct connector was usually made from a strip of fabric of either canvas or asbestos. Sheet metal workers usually cut two strips from metal stock and then cut a strip of canvas or asbestos of the same length. One edge of each metal strip was bent on a metal-bending machine. An edge of the fabric was inserted in each of the bent-over channels and in a series of steps, was secured to the metal.

There were several advantages in having Goldsmith's prefabricated product in a coiled form. It could be stored in a limited space; it was easily handled and the exact length of the connector could be cut from the coil thus eliminating waste.

Goldsmith discovered if he produced prefabricated material in a long flat piece and then endeavored to coil the material, the product buckled and wrinkled severely so that much of the product would be unmerchantable. He discovered that if the prefabricated product were drawn under tension from a forming machine on to a coiling reel, a coil of product could be produced which would be unwrinkled.

We pointed out in our Grant Wilson decision, that the tension on the material and the constant torque applied resulted in the unforeseeable result of no buckling of material or wrinkling of fabric because the tension applied caused the outermost metal strip to travel at a slightly faster speed than the other. We held the claims there in issue to be valid.

Goldsmith developed a machine for making coiled prefabricated flexible duct connector product in which the two metal strips overlapped each other in the coil. He modified an existing roll-making machine to permit the simultaneous handling of two strips of sheet metal. The modifications also included 1) the adaptation of roll-forming machinery so that fabric was attached simultaneously to one edge only of each metal strip while the strips were being moved in parallel relationship; 2) the combination therewith of a crimping roller; 3) the further combination therewith of a coiler which pulled the outer metal strip faster than the inner metal strip through the roll-former. Goldsmith's combination was an integrated machine.

To support its position that Claims 12, 14 and 15 of the patent in suit were infringed, plaintiff argues that in both the patent disclosure and in the defendant's method, two continuous strips of metal are moved in parallel relationship; that in each method the edge of the strips which is to be positioned on the outside of the fabric is then progressively turned in through 180°; that when each of the edges has been turned to form a trough and the strips are in an overlapped position, in both methods the fabric is introduced from above. With respect to the patent disclosure this is done when the edges are at 90° while in the defendant's method, at 135°. Plaintiff says that the patent disclosure and defendant each coil continuously. Plaintiff insists the only difference is that defendant opened up one strip of metal immediately before coiling so that the metal strips did not overlap in the coil.

Plaintiff further argues that method claims are completely independent from the form of apparatus used; that infringement of a method claim is not avoided by utilizing an apparatus differing from the apparatus illustrated in the patent. Plaintiff cites Smith v. Snow, 294 U.S. 1, 11, 20, 55 S.Ct. 279, 79 L.Ed. 721 and quotes therefrom (page 20, 55 S.Ct. page 287): "Respondents do not avoid infringement of the method by varying the details of the apparatus by which they make use of it."

Since the issuance of the Goldsmith patent in suit, defendant has sold a coiled prefabricated duct product. In manufacturing this product, defendant uses three separate machines: 1) the Maplewood machine. This was a standard roll-forming machine which had been on the market prior to 1953. It was used to simultaneously roll-form the edges of two strips of sheet metal. 2) a Johnson machine. This was a special machine built by Johnson for defendant in two hours' time, and was used to crimp the sheet metal to the canvas. 3) a coiler which was built for defendant by Einer Gustafson.

In the Maplewood machine, a U-shaped cavity is formed in the edges of the two metal strips. As they emerge from the machine, the two metal strips are accumulated in long lengths and meander across the floor. The metal strips bend around a curve, one end of which is the exit from the Maplewood machine and the other is the entrance to the Johnson machine. In the curve, the strips cross over each other and reverse direction. In the Johnson machine, power-driven crimping rolls pull the metal strips from the floor, past a device which "humps" the fabric strip and slides it sidewise into the U-shaped cavities in the metal strip and thereafter the cavities are clamped down on the edges of the fabric. As the material emerges from the Johnson machine, it is positioned through a guide which positions the metal strips in a non-overlapping relationship as they approach the coiler where the material is wound into a coil with the metal strips in non-overlapping relationship.

The District Court held Claim 12 to be valid. In many respects, Claims 12 and 14 are similar. In view of our decision in the Grant Wilson case, defendant does not, on this appeal, argue invalidity of Claim 12. We approve the holding of the District Court that Claim 12 of the patent in suit is valid.

The District Court found that defendant's operation did not infringe Claims 12, 14 and 15 of the Goldsmith Patent in suit. The question of infringement or non-infringement is one of fact. Becker v. Webcor, Inc., 7 Cir., 1961, 289 F.2d 357, 360; Hazeltine Research, Inc. v. Admiral Corp., 7 Cir., 183 F.2d 953, 955.

Included in Findings of Fact (30) and (41) are: "(30) Defendant's * * * overall operation is neither the same as, nor the equivalent of, the * * * method defined by claims * * * 14, 15 * * * of the Goldsmith patent. * * " "(41) * * * Defendant's operation * * * is neither the same as, nor the equivalent of, the method as defined in claims 11 and 12 of the Goldsmith patent." Also, in Conclusion of Law (3): "Claims * * * 12, 14, 15 * * * are not infringed by defendant."

Apparently the trial judge made no attempt to rigidly classify his holding of non-infringement of Claims 12, 14 and 15 as findings of fact, mixed findings of fact and law, or conclusions of law, for in Conclusion of Law (25), he stated: "Any conclusion of law entered herein which may be construed in whole or in part as a finding of fact shall be so deemed and treated as if set forth under Findings of Fact herein."

In Independent Pneumatic Tool Co. v. Chicago Pneumatic Tool Co., 194 F.2d 945, we said at page 947: "Of course, in determining whether an accused device infringes a valid patent, resort must be had in the first instance to the words of the claim, but as we said in Flowers v. Austin-Western Co., 7 Cir., 149 F.2d 955, 958, mere application of claim phraseology is not alone enough to establish infringement, nor is similarity of result. There must be real identity of means, operation and result."

In North Star Ice Equipment Company v. Akshun Manufacturing Company, 7 Cir., 301 F.2d 882, this Court said at page 886: "The mere fact that the same end result is accomplished, is not sufficient to be the basis of a finding of infringement. * * * " The test of infringement must be the use by defendant of the inventive features of the patent

in suit. Dixie-Vortex Co. v. Paper Container Mfg. Co., 7 Cir., 130 F.2d 569, 579.

 It is well established in patent law that if two devices do the same work in substantially the same way and accomplish substantially the same result, they are the same, but here, the District Court found that defendant's operation is neither the same as nor the equivalent of that defined in the claims in issue. What constitutes equivalency must be determined against the context of the patent, the prior art, and the particular circumstances of the case. Graver Tank & Mfg. Co., Inc. v. Linde Air Products Co., 339 U.S. 605, 609, 70 S.Ct. 854, 94 L.Ed. 1097.

The trial court found that defendant followed the prior art. Defendant took a standard roll-forming machine and let it do its job in its own way. Then it used a crimper of a well known type and finally, a coiler operating according to long-familiar principles. Defendant's method has "none of the interdependence of partially roll-forming, insertion of fabric, completion of roll-forming, crimping and coiling embodied in Goldsmith's compactly integrated machine. * * *" (Finding of Fact No. 28.)

 The findings and conclusions of the District Court that defendant did not infringe Claims 12, 14 and 15 of the patent in suit are approved, and the decree based thereon is affirmed.

## No. 13793

### DEFENDANT'S CROSS-APPEAL

In some respects, the cross-appeal seems to be much ado about nothing. It concerns only the propriety of Finding of Fact (51).[3] Defendant moved to delete or amend this finding. This motion was made within the 10-day period after the entry of judgment.[4] However, the plaintiff had appealed within six days after the date of the judgment. The District Court denied the motion to delete or amend Finding of Fact (51), possibly on the ground that the Court had no jurisdiction to do so after the notice of appeal had been filed.

 This Court has repeatedly announced the principle that the filing of a notice of appeal terminates the jurisdiction of the district court except insofar as may be reserved to it by statute or rule. In In re Federal Facilities Realty Trust, 7 Cir., 227 F.2d 651, 653, we said it was "[W]ell settled that filing a notice of appeal from a district court's judgment vests jurisdiction over the cause appealed in the court of appeals." However, we have never held that a quick filing of notice of appeal by one party could defeat the adverse party's right to have the district court consider the merits of a timely filed motion under Rule 52(b).

The question of trade secrets was not made an issue herein by the pleadings. However, defendant's counsel, before trial, repeatedly asserted to plaintiff's counsel that defendant's apparatus and methods was "a valuable trade secret." Defendant's counsel emphasized in affidavits that defendant's operations were "a valuable trade secret." The District Court entered an order on May 9, 1961 granting plaintiff's motion to inspect, but included severe restrictions requested by defendant's counsel. Plaintiff's counsel was prohibited from informing his client what he saw at the inspection and was limited as to the number of photographs which could be taken. At the pretrial conference held three days before the trial, defendant's counsel suggested that because defendant's apparatus and meth-

3. "(51) The testimony of Mr. Gustafson and Mr. Johnson, both of whom were defendant's witnesses, showed that defendant's methods and/or apparatus for making coiled duct connector products (comprising fabric having a strip of metal secured to each of its side edges) have not been and are not now trade secrets, and no credible evidence was presented at the trial that would support a different finding."

4. Rule 52(b), Federal Rules of Civil Procedure provides: "Upon motion of a party made not later than 10 days after entry of judgment the court may amend its findings or make additional findings. * * *."

ods was a valuable trade secret, the court should conduct the entire trial *in camera.*

At the trial, defendant's counsel apparently found himself in a dilemma. He found it difficult to keep insisting that defendant's apparatus and methods was a trade secret, and at the same time argue that defendant's apparatus and methods involved the conventional apparatus and methods shown in the prior art. Defendant's counsel finally withdrew from his position concerning trade secrets and freely permitted defendant's apparatus and its operations to be made public.

The District Court undoubtedly had in mind the many obstructions that defendant's counsel had placed in the plaintiff's way by this claim of secrecy. The Court undoubtedly thought there was little substance to the claim and might well have inserted Finding of Fact (51) as an explanation as to why it was entering an order dividing costs in spite of the fact that defendant was successful on the issue of infringement. Finding of Fact (51) merely refers to a claim by defendant's counsel which was frequently and persistently affirmed.

The defendant cross-appealed " * * * from a certain part of the Judgment described as 'Decree' and Findings of Fact and conclusions of Law entered in this action on May 8, 1962, such part being that paragraph of the Findings of Fact designated as '(51)', and from that certain order entered in this action on May 17, 1962."

█ In spite of much verbiage, what defendant attempted to do was to appeal from a finding of fact. The Decree does not mention Finding (51) in form or in substance. The Decree is in no way based upon Finding of Fact (51). Had plaintiff moved to dismiss the cross-appeal, it would have been granted.

We do not understand why defendant was so insistent that Finding (51) be deleted. Defendant's apparatus and methods are not secret now and were not at the time defendant made the motion to delete. It was not error for the trial court to refuse to delete Finding (51) whatever may have been the basis for such denial. Defendant cannot prevail on its cross-appeal.

The District Court provided that each party should bear its own costs and attorney fees. We direct that a similar provision be entered on this appeal.

In Appeal 13792, the judgment of the District Court is affirmed. In Appeal 13793, the order of the District Court denying the motion of defendant to delete or amend, is affirmed.