HICKORY SPRINGS MANUFACTUR-
ING COMPANY, Plaintiff,

v.

FREDMAN BROTHERS FURNITURE
COMPANY, Inc., and Harry
Fredman, Defendants.

Civ. A. No. P–3170.

United States District Court,
S. D. Illinois, N. D.

Aug. 24, 1971.

Dalbert U. Shefte, Charlotte, N. C., Tim W. Swain, II, Peoria, Ill., for plaintiff.

Harvey B. Jacobson, Jr., Washington, D. C., Lyle W. Allen, Peoria, Ill., for defendants.

## OPINION AND ORDER

ROBERT D. MORGAN, District Judge.

This case is before the court on plaintiff's motion for partial summary judgment. By its motion, plaintiff requests that claim 3 of United States Letters Patent No. 3,118,151 be declared invalid, and that claim 4 of said patent be held not infringed by plaintiff's accused product. Both defendants subsequently moved for a stay of all proceedings in the case to allow defendant Harry Fredman to obtain a reissue of his patent. At the hearing July 1, 1971 on said motions, the motion for stay was amended to specify until September 1, 1971, and on August 11, 1971, a new motion for stay was filed asking that action be withheld until September 21, 1971, on which date reissue is expected.

This court has jurisdiction of the case under 28 U.S.C. §§ 1338 and 2201.

The court has had the benefit of scholarly briefs, and after careful consideration of the record, the arguments of the parties, and the authorities cited, it is the decision of this court that the motion for summary judgment on the invalidity of claim 3 should be granted, and that it must be denied on the asserted non-infringement of claim 4. It is further the determination of this court that the motion for a stay of proceedings should be denied.

Due to other court business, the motion for stay of proceedings has become almost moot, but intentional delay does not appear justified and, accordingly, such motion should be denied.

Defendants assert in support of their motion to stay that defendant Harry Fredman is seeking to obtain an expedited reissue of the patent in suit and that the issues to be litigated may be altered substantially. The purpose of the motion for stay is to allow Fredman to obtain reissue and to permit him to substitute the granted reissue letters patent for the original letters patent involved in this case. Thereby it is asserted that judicial economy would be achieved through a full adjudication of all the issues between the parties in this one law suit.

The affidavit of defendants' counsel states that Fredman filed his application for reissue on June 7, 1971, under title 35 U.S.C. § 251. It further states that in the reapplication, claims 1, 2, 4 and 5 were carried over, claim 3's scope was narrowed, and claims 6, 7 and 8 were new claims added. Subsequent affidavits of defendant's counsel show that all eight reissue claims have been allowed by the patent examiner and that the patent will reissue on September 21, 1971. Upon reissue, defendants assert that the court will be faced not only with deciding the infringement and validity of claim 4 of the patent in suit, but also infringement and validity of reissue claims 3, 6, 7 and 8.

This court fails to see how the issues before it will be significantly simplified, or how judicial economy will be promoted, by delay of decision on the issues now joined. After reissue and substitution, this court would still be charged with the duty of determining whether plaintiff is entitled to summary judgment on the issue of infringement of claim 4 of the patent. With claim 4 of the patent in suit the same as claim 4 of the reissue patent, the question with regard to summary judgment on the non-infringement of claim 4 will not be changed.

Furthermore, it is not clear at all that the court will have to decide the questions of infringement and validity of reissue claims 3, 6, 7 and 8 if and when the court does allow the substitution of the reissue patent for the patent in suit. It is apparent from the record that there will be a prior question regarding any intervening rights that plaintiff may have acquired under 35 U.S.C. § 252. Decision on plaintiff's motion for summary judgment therefore should not be stayed.

The sole question to be answered on the motion for summary judgment is whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

* * * show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.Civ.P. 56(c).

It is undisputed that United States Letters Patent No. 3,118,151 (hereinafter "the patent") was issued on January 21, 1964 to defendant Harry Fredman, and has been owned by him continuously since issue. Also undisputed is that defendant Fredman Brothers Furniture Company, Inc. has been and is authorized by defendant Harry Fredman to market and sell devices under the patent. It has been marketing and selling bed rails purported conforming to the patent under the trade name of "Glideaway Bed Firming Rails" since 1962.

The patent is entitled "One-Piece Belt-Type Bedding Carrier," and the alleged invention is described as follows.

The patented device is an arrangement in which one-piece metallic bed rails with an interconnecting belt or strap locks the bedding, securely retaining the spring frame on the bed rails and rigidifying the bed to provide a single interlocked assembly. The one-piece bed rails of the patent have a right angular construction with the horizontal flange flared downwardly at each end into a platelike vertical end portion. The vertical end portion is capable of resiliently flexing laterally and may be more easily flexed laterally than the portion of the rail having an angular cross-sectional configuration. While the width of spring assemblies has been standardized at 52½ inches, the distance between the headboards and footboards will vary considerably from this standard. The flexing of the platelike vertical end portion may be as much as one inch, and thus the end portions of the bed rails may accommodate headboards having variations of two inches more than or less than the standard width of the spring assemblies. With this manner and degree of flexing at the end portions, the horizontal flange of the rail of the patent in suit constantly supports the spring assembly throughout its length, and the vertical flanges of the side rails are held snug against the bedding throughout a major portion of the rail. The cross-member is of a predetermined length and should be such that the distance between the vertical flanges of the two side rails is equal to the width of the bed spring assembly with which the cross-member is to be used.

█ The plaintiff contends that claim 3 of the Fredman patent [1] is invalid by application of the collateral estoppel doctrine. In Triplett v. Lowell, 297 U.S. 638, 56 S.Ct. 645, 80 L.Ed. 949 (1936), the Court held that a determination of patent invalidity is not *res judicata* against the patentee in subsequent litigation against a different defendant. In the recent decision of Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), however, the Court overruled *Triplett* to the extent that it had foreclosed "a plea of estoppel by one facing a charge of infringement of a patent that has once been declared invalid." *Blonder-Tongue, supra,* 402 U.S. at 350, 91 S.Ct. at 1453. Claim 3 of the Fredman patent has been held invalid because the elements of the claim were anticipated by the prior art. Fredman v. Harris-Hub Co., Inc., 311 F. Supp. 734 (N.D.Ill.1969), aff'd 442 F.2d 210 (7th Cir. 1971). Thus, plaintiff's assertion of collateral estoppel may be

---

1. Claims of the Fredman patent reads: "3. A bed assembly comprising a pair of side rails, a pair of end boards interconnecting and extending perpendicularly to said rails, a spring assembly supported on and between said rails and between said end boards, each of said rails being of one-piece metallic construction and having a right angular cross-sectional configuration substantially over a major portion of its length and including a horizontal flange extending under the spring assembly, a tension member interconnecting the central portions of the rails thereby preventing outward deflection of the central portions of the rails and maintaining the horizontal flange thereof in underlying relation to the spring assembly thereby providing support therefor."

properly applied as to the validity of claim 3 under the motion for summary judgment.

The Court made it clear in *Blonder-Tongue* that the plea of estoppel must not be automatically accepted where a patent claim has been held invalid in prior litigation, and cautioned that the situation be one in which "the patentee was plaintiff in the prior suit and chose to litigate at that time and place." *Blonder-Tongue, supra,* 402 U.S. at 332, 91 S.Ct. at 1444. Since the patentee was the plaintiff, he was presumably ready to litigate fully his claims against the defendant and would not face either surprise or unusual difficulties in getting his evidence before the court in the first litigation. Also, the Court stated that the patentee "must be permitted to demonstrate, if he can, that he did not have 'a fair opportunity procedurally, substantively and evidentially to pursue his claim the first time.'" *Blonder-Tongue, supra* at 333, 91 S.Ct. at 1445.

In the case at hand, the defendant patentee was the plaintiff in the prior litigation determining the validity of claim 3 of its patent. Also, the defendant patentee has made no assertion to this court that it did not have a fair opportunity to fully litigate the validity of claim 3 in the first litigation. Therefore, this court concludes that the doctrine of collateral estoppel is properly applicable on the validity of claim 3 of the patent. No genuine issue as to any material fact is shown by the record before the court and it is clear that plaintiff is entitled to a judgment as a matter of law that claim 3 is invalid.

Claim 4 of the Fredman patent incorporates the substance of claim 3. Since claim 3 of the patent is invalid, any infringement of claim 4 must be based solely on the additional elements of patent recited in that claim. The additional elements revealed in claim 4 may be stated as the following: [2]

1. The end of each rail is "formed in the configuration of a vertical plate capable of being resiliently laterally deflected."

2. Such vertical plate end portions then enable the rails to be used to engage "with pins on end boards spaced at varying distances apart * * * while maintaining the central portions thereof in constant spatial relationship."

3. The spatial relation is to be such that the spring assembly will be clamped and locked "to the rails to rigidify the entire assembly by retaining the vertical flanges snugly to the spring assembly throughout the major portion of the length of the rails."

The plaintiff relies heavily on Fredman v. Harris-Hub Co., Inc., 442 F.2d 210 (7th Cir. 1971), to support its motion for summary judgment of non-infringement of claim 4 of the Fredman patent. In that case the Court of Appeals for this circuit held that the district court's findings of non-infringement of claim 4 were not clearly erroneous and thus should not be reversed. The court in *Harris-Hub* saw the parallelism or constant spatial relation achieved between the major portion of the bed rails when assembled as the primary aspect of the special design of the rails. The feature of the special design which allowed this parallelism was the flaring of the horizontal flange into the vertical flange at the end coupled with

---

2. Claim 4 of the Fredman patent reads: "4. The structure as defined in claim 3 wherein each end portion of each rail is formed in the configuration of a vertical plate capable of being resiliently laterally deflected, hook members on the end of each rail for engagement with the end boards, said plates enabling the end portions of the rails to be deflected laterally to engage with pins on the end boards spaced at varying distances apart for con- necting the rails to the end boards while maintaining the central portions thereof in constant spatial relation, the spatial relation between the vertical flanges of the side rails being such that the spring assembly will be clamped therebetween whereby the spring assembly is locked to the rails to rigidify the entire assembly by retaining the vertical flanges snugly throughout the major portion of the length of the rails."

the inflexibility of the right angular cross-sectional portion of the bed rail. The Harris-Hub accused bed rail assembly was viewed as nothing more than the bowing of its conventional rails to achieve a slatless bed assembly. Such bowing did not achieve the parallelism of the patent design and thus did not infringe claim 4 of the patent, either literally or through the doctrine of equivalence.

The plaintiff contends that its accused rails are like conventional rails, and when connected by a centrally located tension member, they bow inwardly along their entire length like those rails held not to infringe in *Harris-Hub*. Therefore, it argues, the accused rails here, as a matter of law, do not infringe claim 4 as interpreted by the United States Court of Appeals for the Seventh Circuit.

It is undisputed here that plaintiff's bed rails do bow *to some extent* along their entire length when assembled. Still, this court cannot hold on that fact alone that the plaintiff's accused device does not infringe claim 4 of the Fredman patent as a matter of law. The Seventh Circuit decision in Harris-Hub cannot be interpreted as standing for the proposition that all slatless bed rails which bow slightly along their entire length do not infringe claim 4 as a matter of law. The question of infringement or non-infringement is a question of fact. Elgen Manufacturing Corp. v. Vent-fabrics, Inc., 314 F.2d 440, 443 (7th Cir. 1963); University of Illinois Foundation v. Block Drug Co., 241 F.2d 6, 14 (7th Cir. 1957). And, the Court of Appeals' holding in *Harris-Hub* was limited to the determination that the district court's findings on the issue of infringement were not clearly erroneous. Fredman v. Harris-Hub Co., Inc., 442 F.2d 210, 215 (7th Cir. 1971).

A summary of undisputed facts in the record here follows, including facts showing a comparison between the accused rails, plaintiff's conventional rails and the Harris-Hub rails, because of plaintiff's argument based on the Harris-Hub decision.

The trade name of the plaintiff's accused bed rails is "Hi-Co Slatless Bed Rails." The plaintiff began marketing such rails in May of 1970 and has been marketing them ever since that time. Although the Hi-Co rails are similar to plaintiff's conventional bed rails, which are to be used with slats, they are not identical. The angle iron portions of the accused Hi-Co bed rails are essentially identical to those of the plaintiff's conventional rails, except the Hi-Co angle iron portion is approximately an inch shorter. The horizontal and vertical flanges of the angle iron of the accused Hi-Co rails and plaintiff's conventional rails are identical and are approximately one and one-half inches wide. The end hook plates of the Hi-Co bed rails are composed of a single piece of metal which is riveted to the vertical flange of the angle iron. The end hook plates of plaintiff's conventional bed rails are composed of two pieces of metal which are also riveted to the vertical flange of the angle iron. The angle iron of the Hi-Co bed rails is riveted approximately one inch from the bearing surface of the end hook plates. The portion of the end plates between the rivets and the bearing surface is a flat piece of metal which is in a vertical position when the bed is assembled. The angle iron of the plaintiff's conventional bed rails are riveted much closer to the bearing surface of the end hook plates. When assembled, the Hi-Co bed rails are connected at their centers by a single cross-member of predetermined length.

In opposition to plaintiff's motion for summary judgment, the defendant has submitted affidavits of two people. One is that of Professor Walter E. Short, a teacher of metallurgy and mechanical engineering at Bradley University, who relates the results of certain tests. The other is that of defendant Harry Fredman, who relates his long experience with bed rails and some conclusions regarding the accused Hi-Co bed rails.

Professor Short's affidavit shows the results of several tests and measurements which he performed on the Hi-Co bed rails and some comparisons of the tests and measurement results with the Glideaway Bed Firming Rails, plaintiff's conventional rail, and the Harris-Hub bed rail, held not to infringe claim 4 in the *Harris-Hub* case, *supra*. Generally, the results of these tests show that the end plate of the accused Hi-Co slatless bed rails are significantly less rigid and more easily bent than the end plates of the plaintiff's conventional bed rails and the Harris-Hub bed rails. Professor Short attributes these results to the differences in design of the Hi-Co end plates. The differences in design noted by him, which allow the Hi-Co bed rail end plates to bend more readily, are: (1) The Hi-Co bed rail has a single element end plate instead of a double element one like plaintiff's conventional rail; (2) The bearing surface of the Hi-Co bed rail is considerably less than that of the conventional rails tested; (3) The angle iron portion of the Hi-Co rail is riveted further back on the end plate than angle iron of the conventional rails tested; and (4) The end plate of the Hi-Co bed rail has a portion cut away unlike the plaintiff's conventional rail.

Professor Short's affidavit also shows that when the Hi-Co Slatless Bed Rails and the Glideaway Bed Firming Rails are assembled on the same headboard and footboard, which measure about 54½ inches between the slots for the hook end plates, both kinds of bed rails assume substantially identical profile patterns over a portion in excess of 90% of the rail lengths. Thus, the accused Hi-Co bed rails achieve essentially the same degree of parallelism as do the Glideaway bed rails which are purportedly manufactured under the patent in suit. This test also showed that both types of rails bowed to some extent along their lengths.

The affidavit of defendant Harry Fredman is based on his experience with bed rails in the furniture business, his personal inspection and comparison of the accused Hi-Co bed rails with conventional rails, and his study of the results of Professor Short's tests. He states that conventional rails are designed for maximum rigidity. He further states, however, that it is clear to him that the end plates of the accused Hi-Co bed rails are designed to allow maximum bending or lateral flexing and that such bed rails are not conventional rails.

█ Plaintiff did not raise the question of validity of claim 4 on its motion for summary judgment. Thus, the sole question presented regarding claim 4 is whether plaintiff is entitled to summary judgment on the issue of infringement. The test of infringement must be the use by the accused infringer of the inventive features of the valid patent claims in suit. Elgen Manufacturing Corp. v. Ventfabrics, Inc., 314 F.2d 440, 443 (7th Cir. 1963). Thus, the question is whether the undisputed facts in the record show that the plaintiff's accused device has not made use of the inventive features revealed in claim 4 of the Fredman patent.

In the view of this court, the key to the invention described in claim 4 is the use of vertical end portions that are considerably more flexible than the major portion of the rail which is in the cross-sectional configuration of a right angle. Such relatively flexible end portions allow the right-angled portions to be connected in the center by a cross-tension member and to be laterally deflected while maintaining an *essentially* parallel relationship. Thus, the vertical flange of the major portion of the rail may be clamped snugly against the spring assembly, resulting in a rigid bed assembly.

It should be pointed out that this court does not view claim 4 of the patent as claiming that the rail design will achieve absolute parallelism without any bowing or flexing of the right-angled portion of the rail at all. The achievement of a high degree of parallelism is the result of the special design.

This view corresponds to that stated by the Court of Appeals for the Seventh Circuit on the patent in suit in *Harris Hub, supra.* Dwelling by that court on the single assumption stated in the specifications of the patent that the angle portion of the rail "will not flex"[3] must be considered relatively. In another statement in the patent specifications, the patentee makes it clear that what is sought by the design is the *relative* inflexibility of the angle portion of the bed rail as compared to the vertical plate-like end portion.[4] Every physical thing is deformable and will flex to some degree when force is applied to it, so "flexibility" must be considered a relative term. It seems clear that the flexing action required by claim 4 is to take place *primarily* at the vertical plate-like end portions, while the angle portion of the bed rail maintains an essentially, though not absolutely, parallel relation. In other words, some bowing may take place in the angle portion of the bed rails when assembled without necessarily taking them out of the scope of claim 4 of the Fredman patent.

■ Under this court's view of the patent and the facts in the record stated above, this court cannot hold as a matter of law that plaintiff's accused Hi-Co bed rails do not infringe claim 4 of the Fredman patent. The plaintiff's accused product does have a substantially less rigid hook end plate than its conventional bed rails. The plaintiff's accused product's angle iron is riveted further back on the end plate than its conventional bed rails, which allows the utilization to some extent of the vertical plate of the end hook plate. Plaintiff contends that the difference in end plates is attributable to an effort to reduce material and assembly costs and to allow compact packing. Plaintiff has not changed its conventional bed rails used with slats, however, and this fact suggests that there may be another purpose in the difference. Furthermore, the plaintiff's accused product, when assembled, achieves a degree of parallelism close to that of the commercial device purportedly manufactured under the Fredman patent. The court is aware that it is the claims of a patent that measures the grant to the patentee, and infringement should not be determined by comparison of an accused product with the commercial device purported conforming to the patent. Graver Tank & Mfg. Co. v. Linde Air Products Co., 336 U.S. 271, 277, 69 S.Ct. 535, 93 L.Ed. 672 (1949). Even so, this court believes that the high degree of parallelism shown by the comparison is sufficient to raise at least one material issue of fact as to infringement, which would preclude summary judgment. Finally, nowhere in the record here is there any evidence on the rigidity of the entire bed assembly achieved with plaintiff's accused bed rails when fully assembled with a spring assembly.

As stated above, the question of infringement or non-infringement is a question of fact. Whether the record shows that the plaintiff's accused bed rails neither literally infringe nor infringe by application of the doctrine of equivalence claim 4 of the Fredman patent as matter of law is the question before the court. The doctrine of equivalence may be invoked if the accused device performs substantially the same function in substantially the same way to obtain the same result. Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097 (1950). Based on facts related above, this court cannot say as a matter of law that plaintiff's accused device does not appropriate the inventive features of the patented design revealed in claim 4 and, therefore, cannot hold that the accused device does not infringe it either literally or by equivalency.

■ Summary judgment should not be granted for non-infringement unless there is a clear omission of one or more

---

3. Patent specifications, column 3, lines 69–70.

4. Patent specifications, column 3, lines 21–25.

elements of the claim or a substantially different mode of operation. See Yardley Created Products Co. v. Clopay Corp., 324 F.2d 932, 933 (7th Cir. 1971). Such clear omission or difference in mode of operation is not apparent to the court from the record before it. This court has not attempted to evaluate the evidence presented with or in opposition to the motion on the issue of non-infringement of claim 4, except to find it inconclusive. Trial on the issue or issues has not been held. Summary judgment simply cannot be granted here on the infringement question.

On August 11, 1971, the defendants herein filed an affidavit stating that official notification has been received that the Fredman reissue patent will issue on September 21, 1971, as United States Reissue Letters Patent No. RE 27,182. The affidavit also states that there is no obstacle known to defendants' counsel which could delay issuance of the patent beyond that date.

On August 13, 1971, the defendants filed another motion for leave to file a second amended answer and counterclaim on September 21, 1971, directed to Fredman reissue patent No. RE 27,182. Defendant argues in support of this motion that on that date the original Fredman patent will be surrendered to obtain the reissue patent. At and subsequent to that time, the patent rights to be adjudicated between the parties in this case will be embodied in the Fredman reissue patent as provided in 35 U.S.C. § 252. It does seem appropriate to allow a substitution of the reissue letters patent to obtain adjudication of the entire controversy between the parties. 35 U.S.C. § 252; Vernay Laboratories, Inc. v. Industrial Electronic Rubber Co., 234 F.Supp. 161 (N.D.Ohio 1964).

The court does not know, or wish to presume, what plaintiff's position may be now on the latest motion by defendants.

If plaintiff opposes the motion to amend and substitute the reissue patent, it should file its reasons and authorities within ten days hereafter under local rule 12(b) of this court, and, if not, it should file its answer to the amended counterclaim within twenty days after filing thereof on September 21, 1971.

Accordingly, it is ordered that Plaintiff's Motion for Summary Judgment on the validity of claim 3 of United States Letters Patent No. 3,118,151 be and hereby is allowed, and that such claim be and hereby is declared invalid.

It is further ordered that Plaintiff's Motion for Summary Judgment on the issue of non-infringement of claim 4 of United States Letters Patent No. 3,118,151 be and hereby is denied.

It is further ordered that defendants' various Motions for Stay of All Proceedings be and hereby are denied.