The judgments of the district court are affirmed in both cases.

AFFIRMED.

**UNDER SEA INDUSTRIES, INC.,**
Plaintiff–Appellee,

v.

**DACOR CORPORATION,**
Defendant–Appellant.

Nos. 87–1137, 87–1254.

United States Court of Appeals,
Federal Circuit.

Nov. 13, 1987.

John A. Krause of Fitzpatrick, Cella, Harper & Scinto, New York City, argued for plaintiff-appellee. With him on the brief was Ronald A. Clayton of Fitzpatrick, Cella, Harper & Scinto, New York City.

Edmond T. Patnaude of Patnaude, Batz & Videbeck, Oak Brook Terrace, Ill., argued for defendant-appellant. With him on the brief were Gerard B. Gallagher of Gallagher, Joslyn & McGurn, Oak Brook Terrace, Ill., and Eric P. Schellin of Arlington, Va.

Before FRIEDMAN and DAVIS, Circuit Judges, and COWEN, Senior Circuit Judge.

FRIEDMAN, Circuit Judge.

These are consolidated appeals from a judgment of the United States District Court for the Northern District of Illinois, holding that the appellee's patent was valid, enforceable, and infringed. We affirm in one appeal and dismiss the other appeal.

I

A. The pertinent facts are set forth in the district court's written findings. See part II below.

The patent (No. 4,278,080) (the '080 patent), issued to Joseph N. Schuch and assigned by him to the appellee Under Sea Industries, Incorporated (Under Sea), discloses a snorkel that is more easily purged of water following a dive than conventional snorkels are. All snorkels function to allow a swimmer to breathe through a hollow tube while face down in the water. One end of the tube is in the swimmer's mouth,

and the other end is open to the air above the surface of the water. A swimmer who wishes to dive takes a breath, dives and, upon resurfacing, clears the tube of water by exhaling sharply. Experienced divers generally have no difficulty in clearing a snorkel of water. Novice divers, however, often experience great difficulty in clearing a snorkel and may panic upon resurfacing.

Attempts have been made to devise a snorkel that is more easily cleared of water by novice divers. Most of the early attempts focused upon either narrowing the bore of the tube or obstructing the tube during a dive. These attempts were only partially successful. A narrow tube is more difficult to breathe through. An obstruction may fail and allow water to enter the tube or pose a hazard by obstructing clearing.

Schuch's invention avoided the problems of the earlier snorkels. It also improved upon snorkels that had "purge valves" to drain some of the water out of a snorkel before a diver attempts to clear it. In the '080 patent specification, Schuch explained that by placing the purge valve at the end of a drainage tube, rather than in the main snorkel tube, the force of the diver's breath was not dissipated.

> Purge valves have been used with questionable success. Such purge valves are ordinarily located in the flow path, generally at the bottom of the snorkel tube adjacent the mouthpiece. The purge vavle [sic] allows the column of water in the snorkel tube to drop to the level of the surrounding water which otherwise would be trapped. Consequently, the volume of water that need be purged is reduced, but the purge valve provides an alternate path for the air. The energy of the air blast is dissipated to an extent dependent on the effective size of the purge valve.... The problem is to find a way to provide a large size purge valve that does not detract from the purge effort.

Mr. Schuch summarized his invention's solution:

> In order to solve the problem, I provide a large purge valve at the end of a branch or bypass conduit that connects with the snorkel tube at a place spaced substantially from the snorkel mouthpiece. The remote location of the purge valve prevents the premature venting of air [so] that the water is effectively purged before any significant slippage occurs between the impelling air and the impelled water.

Only claims 1 and 4 are involved in this appeal. The pertinent language is discussed in part III A, below.

The claimed invention was a commercial success, which Under Sea marketed as the "Shotgun" and the "Son of the Gun" models.

The appellant Dacor Corporation (Dacor) subsequently introduced its version of a snorkel with a purge valve at the end of a separate drainage tube. Dacor marketed its snorkel under the name "Turbo Vent."

The following diagram illustrates the snorkel disclosed in the '080 patent and Dacor's "Turbo Vent" snorkel:

THE PATENT IN SUIT    THE ACCUSED STRUCTURE

---

B. Under Sea filed suit against Dacor alleging that Dacor's "Turbo Vent" snorkel infringed the '080 patent. Dacor counterclaimed for a declaratory judgment of invalidity and non-infringement. After trial, the district court ruled that the '080 patent was (1) valid and (2) infringed, both literally and under the doctrine of equivalents. 2 USPQ2d 1706, 1711 (N.D.Ill.1987).

The facts relating to the three issues Dacor raises—the validity of the district court's rulings that the patent was infringed and had not been procured through inequitable conduct, and that the invention claimed in the patent would not have been obvious—are set forth in part III, below.

## II

A. The district court initially ruled from the bench on December 9, 1986. It rendered oral findings and conclusions. Both before announcing and in announcing those findings and conclusions, however, the court stated that they were "unpolished" and that the prevailing party was to "draw up a formal set of findings of facts and conclusions of law, submit that to the losing party and have the losing party approve it as to form at least, and then I will sign it." In its earlier announcement, the court had stated that it "th[ought]" those oral findings and conclusions "will cover all the bases."

A minute order form initialed by the courtroom deputy on that day stated:

This court enters its oral findings on the issue of liability and finds the patent to be valid and infringed by the defendant. Judgment is entered in favor of the plaintiff and against the defendant. Findings of Fact and Conclusions of Law to be submitted for this court's approval. Status hearing set for January 13, 1987 at 9:15 a.m.

On the same day, the clerk signed a formal judgment, set forth in a separate document as Rule 58 of the Rules of Federal Civil Procedure required, which read as follows:

IT IS ORDERED AND ADJUDGED

That this court finds that patent to be valid and infringed by the defendant. Judgment is entered in favor of the plaintiff and against the defendant.

On December 23, 1986, Dacor filed a notice of appeal to this court from the December 9, 1986 judgment. That appeal was docketed in this court as No. 87–1137.

As the prevailing party, Under Sea filed written proposed findings of fact and conclusions of law. Dacor filed objections to some of them. On January 13, 1987, Under Sea responded, and the district court overruled the objections. On February 23, the district court entered its written findings of fact and conclusions of law, which contained some findings and conclusions not included in the earlier oral findings and conclusions. The clerk's docket sheet for that date shows the following entry: "Enter findings of fact and conclusions of law, on liability issue."

On March 16, 1987, Dacor filed a notice of appeal to this court "from the Findings of Fact and Conclusions of Law on the issue of liability entered in the above-captioned matter on February 23, 1987." We docketed that appeal as No. 87–1254.

■ B. Dacor contends that the filing of its notice of appeal from the December 9, 1986 judgment ousted the district court of jurisdiction to enter its written findings and conclusions, and that we must decide this case solely on the basis of the district court's earlier oral findings and conclusions.

The Seventh Circuit, the precedents of which we follow in deciding this procedural question, *Power Controls Corp. v. Hybrinetics, Inc.*, 806 F.2d 234, 231 U.S.P.Q. 774 (Fed.Cir.1986), follows the general rule that the filing of a notice of appeal ousts the district court of jurisdiction to take further action in a case. *See Local P–171, Amalgamated Meat Cutters v. Thompson Farms Co.*, 642 F.2d 1065, 1073 (7th Cir. 1981). The rule, however, is not inflexible or immutable, and exceptions have been allowed "where a fair construction of the Federal Rules of Civil Procedure so requires." *Id.* We conclude that, in the particular circumstances of this case, the Seventh Circuit would hold that Dacor's filing of its notice of appeal did not preclude the district court from subsequently entering its written findings and conclusions.

In announcing its oral findings and conclusions, the district court stated that they had been prepared "in an unpolished fashion" and that the prevailing party was to prepare formal findings and conclusions that the court would sign. The court thus made it clear that it did not intend its oral announcement to constitute its formal findings and conclusions. Until the court signed the latter, its final determination of the liability phase of the case had not been completed.

The only judgment entered in this case was the judgment of December 9, 1986, Dacor's notice of appeal from that judgment was properly filed, and that notice of appeal invoked our jurisdiction. At that time, however, the district court had not yet entered its written findings and conclusions, which on December 9, 1986 it had announced it would do. We know of no sound reason why the filing of the notice of appeal should have barred the district court from signing the findings and conclusions it intended to enter. We hold that the district court's signing and entry of its written findings of February 23, 1987 was valid.

■ As noted, Dacor's second notice of appeal was only from the findings and conclusions entered on February 23, 1987, no new or additional judgment having been entered on that date. An appeal, however, is taken from the judgment or order of the district court and not from its findings and conclusions. *See Elgen Mfg. Corp. v. Ventfabrics, Inc.*, 314 F.2d 440, 445, 137

U.S.P.Q. 21, 25 (7th Cir.1963); Fed.R.App. P. 3. Accordingly, Dacor's appeal from the February 23, 1987 written findings and conclusions was ineffective, and we shall dismiss that appeal. 314 F.2d at 445, 137 U.S.P.Q. at 25. We therefore decide the merits of this case in the appeal in 87–1137.

C. Dacor next contends that the district court's written findings and conclusions should not be considered because: (1) they were drafted by the prevailing party, (2) they do not accurately reflect the court's oral findings and conclusions, and (3) they "present findings for which no supporting evidence was submitted at trial." Dacor points out that the oral findings and conclusions, unlike the written ones, did not explicitly deal with infringement under the doctrine of equivalents.

■ 1. The fact that Under Sea drafted the written findings and conclusions is no reason to invalidate them. Under Sea did so in response to the district court's instruction, and only after the court had decided the case in Under Sea's favor and had announced its oral findings and conclusions. This case therefore is quite different from *Lindemann Maschinenfabrik GMBH v. American Hoist and Derrick Co.*, 730 F.2d 1452, 221 U.S.P.Q. 481 (Fed. Cir.1984), upon which Dacor relies. In that case the findings the district court adopted were drafted by the prevailing party before trial, and for some of them "no supporting evidence was submitted at trial." 730 F.2d at 1457, 221 U.S.P.Q. at 485.

In contrast, here the district court had Under Sea's proposed written findings and conclusions before it for several weeks, Dacor had the opportunity to and did object to certain of the findings, and the district court rejected the objection. Before it entered its written findings and conclusions, the district court had full opportunity to consider the proposed findings, and there is every indication that it did so.

■ 2. Although the district court's written findings and conclusions of infringement under the doctrine of equiva-

lents were not specifically included in its earlier oral findings and conclusions, that fact does not warrant rejecting those written findings and conclusions. As noted, the court had ample opportunity to and did consider all of Under Sea's proposed written findings and conclusions and Dacor's objections to them. Once the district court adopted its written findings on infringement under the doctrine of equivalents, no matter what their source had been and whether they had previously been explicitly stated, they became the findings and conclusions of the district court. *Anderson v. City of Bessemer City*, 470 U.S. 564, 571–73, 105 S.Ct. 1504, 1510–11, 84 L.Ed.2d 518 (1985); *Schwerman Trucking Co. v. Gartland Steamship Co.*, 496 F.2d 466, 474–75 (7th Cir.1974); *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1374–75, 231 U.S.P.Q. 81, 86–87 (Fed.Cir. 1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1606, 94 L.Ed.2d 792 (1987). Indeed, in stating that it first would announce its findings and conclusions orally, the district court apparently recognized that there might be changes in the written findings and conclusions, since it stated that "I think [the oral determinations] will cover all the bases."

3. The only issue now properly before us with respect to those findings is whether they were clearly erroneous. As we hold in part III A, we answer that question negatively.

## III

A. The relevant portions of claims 1 and 4 are as follows:

1(f) said purge valve being located distant from said mouthpiece whereby a burst of purge air is applied to the water entrapped in the snorkel conduit to lift it out of the snorkel before air vents through the purge valve.

4(g) said purge valve being located sufficiently distant from said mouthpiece such that the column of water entrapped in the main snorkel conduit is bound by a

sharp exhalation effort to move entirely out of the snorkel conduit by the time that the column of water passes the said first opening of the bypass conduit.

The claims further specify that the opening to the bypass conduit is "spaced substantially from and above said mouthpiece."

The major issue the parties have addressed on appeal is the correctness of the district court's finding of literal infringement. That issue turns upon the court's ruling that, as used in the claims, the term "mouthpiece" means only the opening at the end of the snorkel into which the snorkeler blows and does not include the attached lip flange, tooth lugs, and other items forming a part of the lower end of the snorkel that are inserted into the mouth. The significance of this ruling is that the claims require that the opening between the snorkel tube and the bypass conduit on which the purge valve is located is "spaced ... above said mouthpiece." The opening in Dacor's Turbo Vent snorkel is above the "mouthpiece," as the court defined that term, but not above the mouthpiece if mouthpiece means the entire apparatus that the snorkeler inserts in his mouth.

■ We find it unnecessary to decide that difficult question, however, since we conclude that the district court's infringement ruling is supported by its alternative finding, which we hold is not clearly erroneous, that even under Dacor's claim interpretation there was infringement under the doctrine of equivalents. Infringement is a factual determination which we review under the clearly erroneous standard. *Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 961, 220 U.S.P.Q. 592, 600 (Fed.Cir.1983), *cert. denied*, 469 U.S. 835, 105 S.Ct. 127, 83 L.Ed.2d 69 (1984).

In finding infringement under the doctrine of equivalents, the district court made the following findings and conclusions:

[T]he idea is to get the water fully impelled upward and inexorably headed out of the main snorkel tube before the air force is dissipated by a purge valve. Even if our reading of clause (f) in Claim 1 is somehow incorrect, and the language, we agree, is not the model of clarity, we don't believe that Dacor's tests compel us to find non-infringement of that claim....

[S]ome of Davor's [sic] tests, the tests performed at normal clearing depths for a snorkel, show that all of the water is cleared from the top of Dacor's accused snorkel before air vents from the purge valve.

While the Court finds that the Dacor Turbo Vent snorkel literally infringes the claims of the [Under Sea] patent, it is clear that the Turbo Vent snorkel utilizes substantially the same means to function in substantially the same way to achieve substantially the same result as the [Under Sea] patented snorkel. Therefore, the Turbo Vent snorkel is an infringement of the claims of the [Under Sea] patent on this basis also.

When a device performs substantially the same function in substantially the same way to obtain the same result as an invention claimed in a patent, the device infringes the patent under the Doctrine of Equivalents. *Graver Mfg. Co. v. Linde Co.*, 339 U.S. 605, 607–08 [70 S.Ct. 854, 855–56, 94 L.Ed. 1097] (1950). The Turbo Vent snorkel is the full equivalent of and infringes the claims of the [Under Sea] patent.

*Under Sea Industries, Inc. v. Dacor Corp.*, 2 U.S.P.Q.2d 1706, 1710–11 (N.D.Ill. 1987) [Available on WESTLAW, DCT database].

■ The district court erred to the extent it apparently placed the burden on Dacor of showing noninfringement. The burden always is on the patentee to show infringement. *Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753, 758, 221 U.S.P. Q. 473, 477 (Fed.Cir.1984). The district court found, however, that "the Turbo Vent snorkel is an infringement of the claims of the [Under Sea] patent" because

it "utilizes substantially the same means to function in substantially the same way to achieve substantially the same result as the [Under Sea] patented snorkel." 2 U.S.P.Q. 2d at 1710. The evidence relating to equivalency was in conflict but we cannot say, in view of the evidence supporting equivalency, that the finding of equivalency was clearly erroneous.

The principal evidence relating to the issue was two sets of tests that Dacor conducted of the operations of the various snorkels involved. The first set of test results was recorded in a series of photos, the other test was videotaped and both were shown at trial. Mr. Wohlert, who conducted the tests, explained the tests and stated the conclusions he had drawn as a result of the tests. In addition, Professor Engstrom, Under Sea's expert, testified about the functioning of the Turbo Vent snorkel.

Mr. Wohlert stated that the first set of "tests were designed to detect the relationship between what comes out of the top of the snorkel and what comes out of the bottom of the snorkel when a swoosh of air is let through the snorkel." Mr. Wohlert varied the volume and pressure of air and the amount of water in the snorkels being tested. The water in the snorkel had red dye in it and detectors sensitive to the dye were mounted at both the top of the snorkel and at the purge valve. Attached to the detectors was an oscilloscope that had two traces, one for each detector. The traces were photographed and introduced at trial.

After the first set of tests was completed, a diver was videotaped in another set of tests. The diver explained that the videotape was taken while "I was laying essentially prone, almost on my stomach, on a first step landing of a swimming pool, with the video camera mounted on the second step. I was face forward into the video camera itself."

Professor Engstrom stated that he dove with a Turbo Vent snorkel and "cleared it."

Although many of the tests show that the Dacor Turbo Vent snorkel did not function in the same way as the snorkel claimed in the patent, in a number of tests it did so function. Under Sea contended that only the latter tests were performed at the proper depth of water and with the proper amount of air that would be used to clear the snorkel. The district court apparently agreed. It stated:

> Many of Dacor's tests were made when the tube had 10 inches of water in it, which according to the testimony is much more than the average swimmer would have to expel when he returned to a position slightly below the surface of the water. Thus, the tests may be slanted against the claim language contained in the respective clauses (f) and (g) in claims 1 and 4, as that language is interpreted by Dacor. That is, by increasing the depth, the tests made it more likely that air would escape through the purge valve before all of the water was cleared from the main snorkel tube because the column of water to be purged was necessarily longer and thus heavier.

2 U.S.P.Q.2d at 1710.

The district court, which observed the witnesses who had conducted the tests and saw the videotapes and photographs of the tests, cannot be faulted for concluding that the tests that had been properly conducted showed equivalency.

In addition, Professor Engstrom testified unequivocally, based upon his own testing of the Turbo Vent snorkel through diving and then expelling water from it, that the Turbo Vent snorkel "operate[d] in accordance with the Clause (f) of Claim 1" and "with Clause (g) of Claim 4." The district court also had before it an opinion letter from Dacor's patent counsel, rendered before Dacor began production of the Turbo Vent snorkel, which stated: "[Y]our [Dacor's] proposed snorkel operates on the same principle as does the patented snorkel, and I have not seen any prior art which would function in this manner."

In the light of this evidence, the district court's finding of infringement under the doctrine of equivalents is not clearly erroneous.

B. The basis of Dacor's claim that the '080 patent is unenforceable because procured through inequitable conduct is that Under Sea improperly failed to disclose its own Super Jet snorkel to the Patent Office. To sustain a claim of inequitable conduct, the alleged infringer must show by clear and convincing evidence that (1) the nondisclosed information would have been material to the patent examiner, and (2) the nondisclosure was intentional. These two elements must be balanced against each other, and if one is particularly strong, a lesser degree of the other may suffice to show inequitable conduct. *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1363, 220 U.S.P. Q. 763, 773 (Fed.Cir.), *cert. denied*, 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984).

The district court here found that Dacor had failed to show that the prior art was material. The court found:

The Super Jet did have a pure [sic] valve, to be sure, but it did not have a separate bypass or conduit. Without that separate bypass conduit the essence of the invention was not foreseen, taught, anticipated, or even envisioned in any manner by the Super Jet snorkel.

Further, the Court finds that the patent itself and its application and its file wrapper adequately disclosed all the prior art in the field including the Super Jet snorkel. A reading of the Discussion Of Prior Art as set forth in the [Under Sea] patent defines the various types of prior art devices with obstructions at the top and also the purge valves located throughout the main tube, and no inequitable conduct is found in the prosecution of the patent in suit by the plaintiff.

2 U.S.P.Q.2d at 1709. These findings are not clearly erroneous. They fully support the court's ultimate ruling that Under Sea had not engaged in inequitable conduct in obtaining the '080 patent.

C. Finally, Dacor argues that the district court erred in failing to hold that the invention claimed in the '080 patent would have been obvious to one of ordinary skill in the art.

The district court fully considered all the evidence on this issue and properly rejected the contention.

In making its non-obviousness ruling, the district court determined the scope of the prior art, considered the differences between the prior art and the claimed invention, and considered the level of ordinary skill in the art of snorkel design. The court held that "[a]gainst this background, it is clear that the subject matter of the invention of the [Under Sea] patent would not have been obvious at the time of the invention to one of ordinary skills in the art of snorkel design." 2 U.S.P.Q.2d at 1709. Furthermore, the court concluded that the commercial success of Under Sea's patented snorkel, combined with the "long history of unsuccessful and unsatisfactory purge-valve snorkels, [made it] clear that the claimed invention satisfied a long recognized need." *Id.* The court's conclusion on the issue of validity was that:

The facts support a holding that the [Under Sea] patent is valid, should be found valid, and, in any event, that its presumption of validity has not been overcome by clear and convincing proof offered by Dacor.

*Id.* The findings relating to obviousness are not clearly erroneous. They fully support the district court's legal conclusion that the '080 patent would not have been obvious.

CONCLUSION

The judgment of the district court is *affirmed.* The appeal in No. 87–1254 is *dismissed.*

AFFIRMED IN PART, DISMISSED IN PART.