GENENTECH, INC., Innovi N.V. and Leuven Research & Development VZW, Plaintiffs,

v.

The WELLCOME FOUNDATION LIMIT-ED, Wellcome Biotechnology Limited, Burroughs Wellcome Co., BW Manu-facturing, Inc., Genetics Institute, Inc., GI Manufacturing, Inc., and Welgen Manufacturing, Inc., Defendants.

Civ. A. No. 88–330–JJF.

United States District Court, D. Delaware.

July 15, 1992.

Howard M. Handelman, and Richard K. Herrmann, Bayard Handelman & Murdoch, Wilmington, Del., D. Dennis Allegretti, Stephen F. Sherry, Edward W. Remus, and Robert M. Ward, Allegretti & Witcoff, Chicago, Ill., Stephen Raines, Genentech, Inc., San Francisco, Cal., for plaintiffs.

Robert H. Richards, III, Richards Layton & Finger, Wilmington, Del., James H. Wallace, Jr., John B. Wyss, Julie A. Petruzzelli, and Nancy J. Lemay, Wiley Rein & Fielding, Washington, D.C., Paul A. Holcombe, Jr., and Susan S. Dunn, Burroughs Wellcome Co., Research Triangle Park, N.C., E. Anthony Figg, Bernard Rothwell & Brown, Washington, D.C., for Wellcome defendants.

Jeffrey B. Bove, Connolly Bove Lodge & Hutz, Wilmington, Del., Stanley H. Lieberstein, and Edward A. Meilman, Ostrolenk Faber Gerb & Soffen, New York City, James L. Quarles, III, Hale & Dorr, Washington, D.C., for Genetics defendants.

OPINION

FARNAN, District Judge.

The Court has before it Defendants' Genetics Institute, Inc. and GI Manufacturing, Inc. ("the Genetics Defendants") and Defendants' Wellcome Foundation Ltd., Wellcome Biotechnology Ltd., Burroughs Wellcome Co., BW Manufacturing, Inc. and WelGen Manufacturing Partnership ("the Wellcome Defendants") Motions for Judgment Notwithstanding the Verdict or, in the Alternative, For New Trial (D.I. Nos 413 and 412 respectively). Both motions are based upon similar allegations and so the Court will address both motions in this memorandum opinion. The Court has read the parties written submissions and thus this matter is ripe for review.

PROCEDURAL BACKGROUND

This patent action consists of two consolidated cases that relate to the alleged infringement of three patents (United States Patent No. 4,766,075 ("the '075 patent"), No. 4,752,603 ("the '603 patent"), and No. 4,853,330 ("the '330 patent")) which describe glycoprotein tissue plasminogen activator ("t-PA") and its production. On March 8, 1990, the Court entered partial summary judgment in favor of both the Genetics and Wellcome Defendants finding that neither the '603 patent nor the '075 patent was literally infringed by either met-t-PA (a variant of t-Pa produced by the Wellcome Defendants in the United Kingdom) or FE1X (another variant of t-PA produced by the Genetics Defendants). Further, the Court concluded that the importation of met-t-PA without any use of the genetically engineered cell lines in the United States did not infringe the '075 patent.

On March 12, 1990, the remaining issues were tried before a jury. The jury returned a verdict for the Plaintiff finding that the '075 and '330 patents were valid and enforceable. Further, the jury found that both the Wellcome Defendants' and Genetics Defendants' t-Pa products were equivalent to the subject matter found in the patents in suit and thus infringed those

patents. The jury also found against the Genetics Defendants on their unfair competition claims. Finally, jury found against the Wellcome Defendants on their antitrust counterclaim.

## ISSUES

The Wellcome Defendants' first claim that a Judgment Notwithstanding the Verdict and/or a new trial is required to preserve the incentive for the development of improved drugs and to protect the integrity of the patent system. They also argue that the jury's determination of infringement under the doctrine of equivalents is unsupported by the evidence and legally erroneous. In support of that claim they allege that the Wellcome plasminogen activator is not the equivalent of human t-PA and that the jury instructions proposed by the Plaintiff were prejudicial.

The Wellcome Defendants also claim that the '603 patent is invalid as a matter of law because it was anticipated by the prior art and because the Plaintiff improperly introduced "new matter." Next, they claim that the overwhelming evidence of Plaintiff's inequitable conduct before the Patent and Trademark Office requires a judgment as a matter of law on the issue of unenforceability.

Finally, the Wellcome Defendants argue that additional misconduct by the Plaintiff at trial misled the jury, rendered the trial unfair, and thus requires a new trial.

The Genetics Defendants also argue that they are entitled to a judgment as a matter of law that their FE1X product is not the equivalent of human t-PA. Additionally, they argue that the doctrine of prosecution history estoppel also precludes a finding that their product infringes the patents.

The Genetics Defendants further contend that it was error to exclude the file wrapper references to the British proceedings, that the jury should have been informed that literal infringement was not an issue, that the Plaintiff's jury instructions were prejudicial, and that all the relevant evidence supported their unfair competition counterclaim.

The Plaintiff contends that there is substantial evidence to support the jury's verdict and that the lawsuit was fully and fairly litigated.

## JUDGMENT NOTWITHSTANDING THE VERDICT

A court may grant a motion for entry of judgment notwithstanding the verdict where "there is no legally sufficient evidentiary basis" for the jury's verdict. Fed. R.Civ.P. 50(a). In considering the evidence before it, the Court must view it in a light most favorable to the non-moving party and draw all reasonable inferences favorable to the non-moving party.

### A. INFRINGEMENT

#### 1. Doctrine of Equivalents

■ The Court finds that there is substantial evidence to support the jury's finding that both sets of Defendants' products infringed the patents in suit under the doctrine of equivalents. In its pretrial rulings, the Court concluded that the Defendants' t-PA products all had the same result and function as human t-PA. The real dispute that was left for trial was whether the Defendants' t-PAs performed those functions, and achieved those results using substantially the same means as the claimed human t-PA. Certainly the jury could use the doctrine of equivalents to make that determination and thus decide whether the Defendants' products infringed the patents.

The '603 patent calls for t-PA which is immunologically distinct, has thrombolytic properties, and has a specific activity equivalent to "about 5000,000 IU/mg." The sole difference between the patented product and the Wellcome Defendants' product is the substitution of a single amino acid (methionine for valine). This substitution is the result of an inadvertent cloning error by Wellcome in its effort to copy human t-PA. Collen Tr. 340–341; Johnston Tr. 1163–70. On the basis of these facts, the Court finds that there was substantial evidence in the record to support the jury's finding that the Wellcome Defendants' products performed substantially the same

function, in substantially the same way and achieved substantially the same results as the patented product. The jury reasonably found that the Wellcome Defendants' product was the equivalent of the human p-TA under the scope of the '603 patent and that the Wellcome Defendants were liable for infringement. Plaintiff R. Ex 11 at BP 31137; Johnston Tr. 1177; Mann Tr. 545.

There is also substantial evidence in the record to support the jury's findings that the Genetics Defendants' product also was immunologically distinct, had thrombolytic properties, and had a specific activity equivalent to "about 500,000 IU/mg." Marder Tr. 2459; Larson Tr. 2617. Thus, the Court finds that the jury reasonably concluded from the evidence before it that the Genetics Defendants' product was equivalent to the '603 patent's human p-TA under the doctrine of equivalents. Westlanfer Tr. 2950.

### 2. The Doctrine of Prosecution History Estoppel

 The Genetics Defendants argue that prosecution history estoppel also precludes the jury's finding of infringement. Under the doctrine of prosecution history estoppel when claims are amended or representations are made for the purpose of avoiding prior art, the resulting claims cannot be expanded under the doctrine of equivalents to cover what has been abandoned. *Townsend Engineering Co. v. Hitec Co.*, 829 F.2d 1086, 1090–91 (Fed.Cir. 1987). The Genetics Defendants argue that the limitation of the patents in suit requiring human t-PA with a specific activity of "about 500,000 IU/mg" was a limiting modification made by the inventor during the patent prosection and that t-PA with a specific activity of 266,000 or less is not included in the patent. The Genetics Defendants further argue that the only credible evidence presented at trial indicated that their product, FE1X, has a specific activity of 254,000 IU/mg and thus is not covered by the patent.

The Plaintiff argues, and the Court agrees, that there was substantial evidence to support the jury's finding that t-PA which has a specific activity ranging from 350,000 to 450,000 IU/mg is equivalent to the claimed specific activity of "about 500,-000 IU/mg." Colleen Re. 328–29; Larson Tr. 2606–07, 2632–36. Further, the record contains substantial evidence that the Genetics Defendants' t-PA has a specific activity greater than 266,000 IU/mg. Collen Tr. 328–29; Larson Tr. 2606–07, 2632–36.

### 3. Equivalence and the Kringle Region

The Genetics Defendants' claim that their product cannot infringe the '075 and '330 Goeddel patents because it does not contain the essential kringle region or its equivalent.

The patents at issue claim that any derivatives of human t-PA which retain the essential kringle and serine protease regions generally characteristic of human t-PA are within the scope of the patent. The Plaintiff argues that variants of human t-PA, which include the kringle region but which contain variations in the amino acid sequences that do not significantly effect the properties of human p-TA, are covered by the patents. Plaintiff's Tr. Ex 27 at column 5, lines 24–41; Marden Tr. 2459–60. The plain language of the patent specifies retention of the region, not retention of the exact amino acid compositions and sequence of the kringle domain found in native, human t-PA. Veher Tr. 781–82. Thus the Court finds that there was substantial evidence for the jury to reasonably conclude that while the Genetics Defendants' t-PA varied slightly from the patented t-PA, it was, however, substantially the same product performing substantially the same function and thus was infringing under the doctrine of equivalents.

## B. INVALIDITY

### 1. Anticipation

 The Wellcome Defendants assert that Dr. Wallen's prior work anticipates and renders obvious the claims of the '603 patent. The Plaintiff argues that the Wallen abstract and grant application do not contain all the elements of the invention set forth in Claim 1 of the '603 patent and thus are not anticipatory. In order to find that

a patent was anticipated it is necessary to find a single piece of prior art which contained all of the elements of the claims.

The record contains evidence that Dr. Wallen's work did not indicate that his t-PA contained the essential thrombolytic properties necessary for dissolving blood clots in human beings nor did it indicate that his p-TA was immunologically distinct from urokinase. Wallen Tr. 1670. As stated earlier, the patent requires that the t-PA have thrombolytic properties, be immunologically distinct from urokinase and have a specific activity of "about 500,000 IU/mg." The Court finds there was substantial evidence for a jury to reasonably conclude that Dr. Wallen's work did not anticipate the claims of the '603 patent because two of the elements required to establish the defense of anticipation were missing.

2. Introduction of New Matter

■ The introduction of new matter into the disclosure of an invention during the patent application process is prohibited. 35 U.S.C. § 132. The Wellcome Defendants argue that the addition of the 500,000 IU/mg specific activity limitation introduced new material which rendered the '603 patent invalid and unenforceable. Plaintiff argues that the 500,000 IU/mg limitation was an inherent feature of the claimed t-PA and that the Patent Examiner did not deem the amendment to be new matter. Chisum Tr. 2883–85. The Court finds that there was evidence to support the jury's finding that the 500,000 IU/mg specific activity was an inherent property of the claimed human t-PA. See Vehar Tr. 2053.

3. Inequitable Conduct

■ The Wellcome Defendants' claim that the patents in suit are unenforceable because of the alleged inequitable conduct of the Plaintiff before the PTO. The question of inequitable conduct is one of equity which is committed to the discretion of the Court. *Kingsdown Medical Consultants v. Hollister, Inc.,* 863 F.2d 867, 876 (Fed. Cir.1988). The Court must determine the materiality of the alleged misstatement or omission and whether that alleged misstatement or omission was intentional. *Under Sea Industries, Inc. v. Dacor Corporation,* 833 F.2d 1551, 1559 (Fed.Cir. 1987).

■ The Wellcome Defendants first allege that the Plaintiff suppressed the 1979 Wallen abstract. The Plaintiff argues that Dr. Wallen's abstract did not discuss thrombolytic or immunological properties and thus was not material to the evaluation of the patent claims because it did not disclose anything more than had been disclosed to the Patent Examiner about Dr. Rijken's prior art. Wallen Tr. 1660–61; Collen Tr. 370–75. The Court finds there was substantial evidence to support the jury's finding that the 1979 Wallen abstract was not material because it was cumulative and added little new information.

The Wellcome Defendants also allege that Plaintiff withheld specific activity data for recombinantly derived t-PA using a clot lysis assay against the urokinase standard. Plaintiff argues that this data was not material to the claims of the '603 patent because the material tested was recombinant t-PA and not t-PA derived from Bowes melanoma cells which is required by the patent. Vehar Tr. 2049–50. Further, the assay used was different and the scientist who did the work questioned the results and provided criticism of the test in three areas. Vehar Tr. 2054. Thus the court finds there was substantial evidence for the jury to find that Plaintiff did not withhold data.

■ With respect to intent to deceive, the record contains substantial evidence for a reasonable jury to conclude that the inventors and their lawyers never acted with any intent to deceive the Patent Examiner. Dr. Goeddel testified that he never misrepresented or intentionally withheld any pertinent information. Goeddel Tr. 2347. Mr. Kiley, Genentech's patent attorney, testified that it was never his intention to conceal any pertinent information. Kiley Tr. 2377. The Wellcome Defendant's own expert witness, Dr. Brammar, refused to state that Dr. Stark intended to mislead that Patent Office. Brammar Tr. 1921–22.

218

On such a record, the Court finds that there was substantial evidence to support the jury's finding that there was no intent to deceive by any person associated with the patent prosecution.

Further, the Wellcome Defendants argue that the '330 and '075 patents were procured through fraudulent misrepresentations to the Patent Examiner regarding the Van Zonneveld article. Plaintiff argues that the Patent Examiner considered the article but allowed the patent to issue. The Court finds that there was substantial evidence to support the jury's finding that the Plaintiff had provided the Patent Examiner with the article during the examination of the '075 patent application and that the Patent Examiner allowed the patent to issue. Stark Tr. 2522–23.

The Wellcome Defendants also assert that the Plaintiff withheld densitometer data from the Patent Office which would have been relevant to the question of messenger RNA abundance. Plaintiff argues that it provided the Patent Examiner with densitometer data with the same range of 1 in 3,000 to 1 in 10,000 and thus the allegedly withheld data would have been cumulative. The Court finds that there was substantial evidence for a jury to conclude that the densitometer date would not have provided the Patent Examiner with any new information and thus was cumulative and immaterial. Goeddel Tr. 2338–39.

Finally, the Wellcome Defendants assert that the Builder affidavit constituted a misrepresentation to the Patent Examiner. Plaintiff argues that the Builder affidavit was not relevant to the nature of the recombinant DNA technology claimed by the '075 and '330 patents. The Court finds that there is substantial evidence for a jury to conclude that the Builder affidavit relates to the purity of the recombinant t-PA product and thus the Builder affidavit was not material to the examination of the patent.

### NEW TRIAL

■ In order to obtain a new trial, the moving party must clearly demonstrate that prejudicial error has been committed or that substantial justice has not been achieved. Questions of weight of the evidence, credibility, and conflicts in the evidence must be left to the jury's province and will not be disturbed as long as substantial justice occurs. *E.E.O.C. v. State of Delaware DHSS*, 865 F.2d 1408, 1413 (3d Cir.1989).

■ The Court finds without merit the Genetics Defendants' claims regarding (1) the exclusion of the file wrapper references to the British proceedings, (2) the failure to admit testimony as to the effect of an adverse decision in this case, (3) the finding of equivalency under the doctrine of equivalents, (4) the alleged prejudicial nature of the jury instructions, (5) the alleged complete failure of evidence concerning GI Manufacturing, and (6) the amount of evidence supporting GI's unfair competition counterclaim. Therefore, the Court will not grant a new trial on these grounds.

As for the Wellcome Defendants' claims that additional misconduct by the Plaintiff at trial misled the jury and rendered the trial unfair, the Court finds them to be without merit. First, the Court finds that the admission of the Flynn Memorandum did not prejudice the Wellcome Defendants. The Flynn Memorandum was part of the Wellcome Defendants' potential list of trial exhibits and thus the Wellcome Defendants cannot claim to have been surprised by its introduction. Further, The Wellcome Defendants did not object at the time the Memorandum was introduced at trial.

Second, the Court concludes the exclusion of the British proceedings was warranted given that they involved different claims, different parties, different dates of invention and prior art, and different patent law standards.

■ Thirdly, the Court concludes exclusion of a reference to the probability that Plaintiff would request a permanent injunction if infringement was found did not prejudice the Wellcome Defendants because the jury was informed that the owner of a patent had the right to exclude others from making, using or selling the patented in-

vention for the term of the patent. Vernon Tr. 2143–45.

Finally, the Court concludes that the jury charge was neither erroneous nor prejudicial. There has been no showing that any error in the instructions, when taken as a whole, was so pervasive as to have misled the jury and prejudiced the Defendants' case. The Court is not required to instruct the jury as requested by the parties; the Court must only delineate the issues and the applicable law. The Court finds that there was no fundamental error in the jury charge and thus there was no prejudice to the Defendants which would require a new trial.

## CONCLUSION

For the reasons discussed, the Court will deny both the Genetics and Wellcome Defendants' Motions for Judgment Notwithstanding the Verdict or, in the Alternative, For New Trial.

An appropriate Order will be entered.